STATE EX REL. RAYMOND L. JONES v. RALPH H. TAHASH.

149 N. W. (2d) 270.

March 10, 1967—No. 40,366.

*Raymond L. Jones*, pro se, for appellant.

*Robert W. Mattson*, Attorney General, and *Gerard W. Snell*, Solicitor General, for respondent, warden of State Prison.

NELSON, JUSTICE.

Appeal from an order of the District Court of Washington County denying relator's petition for a writ of habeas corpus.

Relator and his wife, Margaret Louise Jones, were arraigned on July 25, 1962, on an information charging them with first-degree robbery which was alleged to have been committed on July 17, 1962, in Lake County, Minnesota. A plea of guilty entered by relator's wife was ordered vacated by this court and the case was remanded to the district court for further proceedings. State v. Jones, 267 Minn. 421, 127 N. W. (2d) 153.

Relator was represented by court-appointed counsel at all stages of the proceedings in the court below, entered a plea of guilty to the charge set out in the information, and was sentenced to the statutory penalty of not less than 5 nor more than 40 years pursuant to Minn. St. 1961, § 619.42.

The information jointly charged relator and his wife with having robbed Leland Penrod and Herman Penrod on July 17, 1962, and having taken from them at the point of a Winchester rifle $77 in cash and a four-door Impala Chevrolet automobile. Separate attorneys were appointed to represent each defendant, and at the arraignment the court examined and informed each defendant of the nature of the charge and the consequences of pleas of guilty and not guilty. Each attorney representing the defendants stated to the court that he had had opportunity to and did confer with his client and the defendants stated they had had opportunity to confer with their attorneys. Each defendant entered a plea of guilty to the charge and before sentencing the trial court examined each at great length as to his history and family background. After its examination prior to sentencing the trial court gave defendants a full

opportunity to speak in their own behalf, also allowing their respective counsel to do the same.

The issues here on appeal are whether the record shows prejudice on the part of the trial court against relator; whether he was adequately represented by counsel prior to being sentenced; and whether prejudicial error was committed by the court in questioning the sheriff, who was not under oath, during the presentence hearing.

■   As to the first issue, relator presents the rule that in a criminal case a defendant is denied due process and equal protection under the Fourteenth Amendment to the Federal Constitution if he is tried before a prejudiced judge. In Osborne v. Purdome (Mo.) 250 S. W. (2d) 159, it was stated that whether there was prejudice on the part of a judge must be determined by considering the record as a whole. Such consideration in the instant case would indicate that the trial judge was not prejudiced against relator, but rather sympathetic. This attitude, we think, is disclosed by the judge's statement of his reasons for imposing an indeterminate sentence:

"* * * Then the Department of Corrections is in no wise bound. They can release you at any time they desire. If I imposed a limited sentence, for instance, ten years, or even five years, they would interpret that as my conclusion that you should serve that ten-year period. In other words, under five to forty, you will probably serve less time than you would under a straight ten or fifteen year sentence. *You are not being charged with your priors. Under our law, if Mr. Jones had charged you with your prior convictions in California, you would take ten to eighty.* The reason for the severe penalties for this type of crime is the danger to human life involved in armed robbery. This is the most serious offense under our law." (Italics supplied.)

An examination of the record fails to disclose any other statements by the sentencing court from which it might be inferred that the court was prejudiced against defendant. We said in State ex rel. Dinneen v. Tahash, 272 Minn. 7, 13, 136 N. W. (2d) 847, 851:

"* * * [A] presumption of validity is accorded a record of proceed-

ings resulting in judgment of conviction unless a jurisdictional defect appears on the face of the record."

Mere error in the proceedings which resulted in the detention of one seeking habeas corpus would not be sufficient. Unless it could be said that there were procedural irregularities of such type or magnitude as to render the hearing unfair or that there was no evidence to support the order, inquiry must be considered at an end. See, Eagles v. United States ex rel. Samuels, 329 U. S. 304, 67 S. Ct. 313, 91 L. ed. 308.

■ It is contended by relator that the court erred in informing him, after his plea of guilty, that the Fifth Amendment was no longer available to him and that he was required to answer questions. We find, however, in searching the record that the trial judge, upon commencing the interrogation of the defendant after his plea of guilty, said:

"Q. I repeat these because you are now under oath. You see, once having entered a plea of guilty, you have no right to refuse to answer questions. You may refuse, but the so-called constitutional objection to self-incrimination no longer applies."

See United States v. Gernie (2 Cir.) 252 F. (2d) 664, where a person who had previously pleaded guilty to possession of narcotics was called as a witness for the government in its case against defendant for violation of narcotics laws and was asked where he had obtained the narcotic involved. The witness refused to answer, invoking the Fifth Amendment. The trial judge sustained his refusal, but the appellate court said that the government had the right to compel the witness to answer the questions as he had pleaded guilty and could not be further incriminated by answering where he had obtained the narcotic. It seems clear, therefore, that the trial judge had the right in the instant case to inquire of relator concerning the facts bearing on the crime to which he had entered his plea of guilty. Under the circumstances, we see no merit to relator's contention.

■ Relator claims inadequate representation by his appointed counsel prior to being sentenced, citing State ex rel. Searles v. Tahash, 271 Minn. 304, 136 N. W. (2d) 70. It appears that in the Searles case relator himself was not given an opportunity to exercise his common-law

right of allocution, and it further appears that his counsel failed to speak in his behalf before sentence was pronounced. This court, under those circumstances, ordered the matter remanded and the sentence vacated. The court also ordered (271 Minn. 307, 136 N. W. [2d] 73):

"* * * Counsel will be appointed for the purpose of presenting to the court all of the mitigating facts, circumstances, and arguments which are available and appropriate to a reconsideration of the sentence originally imposed."

If relator's counsel is to be criticized at all in the instant case it must be for his statement:

"I would not, even if I felt that it were likely, ask for a parole or any probation for the present, because I don't believe that this young man is yet equipped to go out and cope with the problems of society like those who have enjoyed the blessings which are normal to most young people who grow up in good homes."

If counsel's statement before the court were limited to that remark, relator's contention might well be found to have some support in the record. When, however, we compare the total of the statement made by counsel in the instant case with the statements made to the court by Searles' counsel (271 Minn. 306, 136 N. W. [2d] 72), it is evident that a great disparity exists. Counsel for relator herein made a lengthy statement to the court below, taking up some 2½ pages of the record. These statements go fully into relator's past in an attempt to show that he was the victim of a broken home and that under all of the circumstances he was not totally lost to society as a productive citizen. When the statement made by relator's counsel is viewed as a whole, it clearly indicates an attempt on his part to present to the court mitigating facts, circumstances, and arguments appropriate to a consideration of what might be a proper sentence.

We conclude that the record fails to disclose facts that would support the contention that relator was denied effective assistance of counsel. In State v. Waldron, 273 Minn. 57, 58, 139 N. W. (2d) 785, 787, this court said:

"To be sufficient, allegations of incompetence on the part of counsel must disclose a performance so incompetent as to make the trial a farce or a mockery of justice. The bare assertion that the attorney for the accused is not competent is not of juridical significance. In the absence of any affirmative showing to the contrary, there is a controlling presumption that court-appointed counsel in a criminal case not only has consulted with the accused, but also has advised him in good faith of his rights in entering a plea of guilty or not guilty."

The record is clear that relator had ample opportunity to confer with his counsel. Thus, there is nothing to overcome the presumption that counsel gave him proper representation. Counsel's statement to the court was complete in all respects and especially as to relator's background. It is hard to believe that counsel could have said anything further that would have affected the court's sentence. Relator himself was given an opportunity to speak in his own behalf. When questioned under oath after his plea of guilty and before sentencing, he frankly admitted all of the elements of the crime with which he was charged. Under the circumstances, relator's objection to the fact that other felonious activities were brought into his interrogation would hardly support the claim that prejudice arose therefrom, and especially in view of the fact that no prior convictions were charged and he was not proceeded against on any other charge than that set forth in the information.

■ Relator further contends that it was prejudicial error for the court to permit the sheriff to make statements at the presentence hearing without first being placed under oath. The record, however, does not indicate that the statements made by the sheriff were prejudicial in any way. The court had indicated that it had read a newspaper account of the incident, which account stated that relator had fired at two persons in a boat. The newspaper account indicated that the shot had struck the boat. The court asked if that account was correct and the sheriff responded, "It hit the gunnel, sir." The second statement by the sheriff was: "The two people in the Oldsmobile were the same people in the boat. They were just getting ready to get in the boat." This second statement did no more than assist in clarifying the physical location of some unimportant parties.

194

The first statement could not be considered prejudicial, since relator had already admitted shooting at the boat. The last two statements can hardly be considered prejudicial, since they merely affirmed that relator and his wife had given an accurate description of the incident which gave rise to the information filed against them.

■ Relator's complaint of the court's failure to have a presentence investigation in accordance with Minn. St. 1961, § 610.37, is also without substance. The statute did not compel a presentence investigation. That was left to the court's discretion, and in the instant case such an investigation would have been of little assistance to the court.

We agree with the conclusion of the court below that an evidentiary hearing in the present habeas corpus proceedings would be of no value, since all the contentions set forth in relator's petition were negated by the arraignment record.

While we are compelled to affirm because of the utter failure on the part of relator to establish prejudicial conduct on the part of anyone having a part in the proceedings which led to the sentence imposed upon him, nevertheless, we would suggest that in future proceedings of a similar nature evidentiary hearings be accorded the petitioner in order to forestall repeated applications for writs of habeas corpus to the courts of this state as well as to other courts available for the filing of similar petitions.

Affirmed.