Burns TRUSTY, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16925.

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1972.

Curtis A. Parks, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

BRETT, Judge.

Appellant, Burns Trusty, Jr., hereinafter referred to as defendant, was convicted in the District Court of Tulsa County, Case No. CRF 70–1901, of second degree burglary, after former conviction of a felony, with punishment fixed at ten years imprisonment. Judgment and sentence was imposed on March 3, 1971, and this appeal perfected therefrom.

Defendant and Herman Hoyle Neal were charged with the burglary of a 1963 Chrysler automobile in a parking lot by the side of Warren's Cafe on Southwest Boulevard in Tulsa on October 4, 1970. Neal entered a plea of guilty to the charge before defendant went to trial on a not guilty plea.

The evidence at the trial established that a policeman saw Neal walking fairly fast away from the Chrysler carrying several suits of clothes and half dragging a pair of pants. While Neal was walking from the Chrysler he dropped one pair of pants. As the officer observed, a red Ford pulled into the parking lot and Neal got in the car. The officer identified the driver of the Ford as the defendant. Upon observing the Chrysler, the officer saw the wing glass had been broken out. Thereupon the officer radioed a pick-up for the Ford, describing it, the suspects, and the probable stolen articles. The owner of the Chrysler, located in the cafe, identified the pants dropped by Neal as having been taken from his car which had been forcefully broken into. Another officer, pursuant to the radio pick-up, stopped a red Ford driven by defendant and occupied by Neal, in which were found several suits stolen from the Chrysler.

Defendant testified in substance that he had encountered Neal by chance on the morning in question and had had breakfast in the cafe with him. After breakfast defendant left Neal and drove two blocks to a drug store. On returning from the drug store he saw Neal with what he believed to be Neal's clothing. Defendant gave Neal a ride, but was stopped within a few blocks by the police. Defendant denied any knowledge of the burglary of the Chrysler.

Defendant called his co-defendant Neal as a witness. Neal testified that he had entered a plea of guilty to the charge that he had committed the burglary of the Chrysler. However, Neal refused to answer further questions concerning the offense, invoking the privilege against self-incrimination. After some discussion between counsel outside the jury's hearing, the trial judge refused to compel Neal to testify, ruling that the ". . . privilege is personal to this man, and if he wants to assert it, whatever his reasons for wanting to assert it, I don't see there's anything that the court can do about it."

This case presents the question whether a person, called as a witness at the trial of another, may invoke the privilege against self-incrimination and refuse to testify regarding an offense to which he has entered a plea of guilty.

■ The United States Constitution's Fifth Amendment privilege against self-incrimination provides that no person "shall be compelled in any criminal case to be a witness against himself." This privilege is applicable to the states through the Fourteenth Amendment and is governed by federal standards. Malloy v. Hogan, 378 U.S. 1, 3, 11, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Likewise, the Oklahoma Constitution provides that "No person shall be compelled to give evidence which will tend to incriminate him." Article II, § 21. Thus, "a person charged cannot be compelled to testify, either for himself, a codefendant, or for the state, while he is a party in the case." Hopkins v. State, 11 Okl. Cr. 385, 146 P. 917 (1915).

■ However, a witness may not invoke the privilege if he is not liable at that time to prosecution for the offense which would be disclosed. Travelers Fire Insurance Co. v. Wright, Okl., 322 P.2d 417 (1958). "The interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself—in other words, to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the amendment ceases to apply." Hale v. Henkel, 201 U.S. 43, 67, 26 S.Ct. 370, 376, 50 L. Ed. 652 (19 ). If the requested testimony can no longer subject the witness to criminal prosecution, the danger which is the sole concern of the privilege comes to an end. "Once the reason for the privilege ceases, the privilege ceases." Ullman v. United States, 350 U.S. 422, 439, 76 S.Ct. 497, 507, 100 L.Ed. 511 (1956).

According to the federal standard, in order to invoke the privilege, "it need only be evident from the implications of the question, in the setting in which it is asked,

that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Malloy v. Hogan, supra, 378 U.S. at 11, 12, 84 S.Ct. at 1495. Under this test the witness invoking the privilege is mistaken if it is "perfectly clear" that the answers "cannot possibly have such a tendency to incriminate." Id. at 12.

■ Thus the narrow question is whether after entering a guilty plea the witness could incriminate himself. "A plea of guilty is more than a confession which admits that the accused did various act; it is itself a conviction; nothing remains but to give judgment and determine punishment." Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination. . . ." Id. 395 U.S. at 243, 89 S.Ct. at 1712. Accordingly, upon entering a plea of guilty the accused admits the charge and waives the privilege against self-incrimination. Having incriminated himself with his plea to the charge, there ceases to be a reason for the privilege in that connection.

■ Several courts have held that a plea of guilty waives the privilege against self-incrimination. People v. Sierra, 117 Cal.App.2d 649, 256 P.2d 577 (1953). State v. Knudtson, 11 Idaho 524, 83 P. 226 (Idaho 1905). Commonwealth ex rel. Blackman v. Banmiller, 405 Pa. 560, 176 A.2d 682 (1962). United States v. Cioffi, 242 F.2d 473 (2d Cir. 1957). State ex rel. Jones v. Tahash, 276 Minn. 188, 149 N.W. 2d 270 (1967). Hanneman v. State, 50 Wis.2d 689, 184 N.W.2d 896 (1971). Furthermore, it has been ruled that the privilege is lost at the moment the plea of guilty is entered, although the sentence may not yet have been imposed. This was the holding in Knox v. State, 234 Md. 203, 198 A.2d 285 (1964), where the court "rec-

ognized that a witness who has pleaded guilty waives his right to claim immunity for the crime in question, because the prosecution is over." The court in the Knox case noted that the witness' reason for wishing to remain silent, exposure of his former convictions, was not a valid consideration as his record would be available to the judge at sentencing.

In Commonwealth v. Tracey, 137 Pa.Super. 221, 8 A.2d 622 (1939), the defendant, at his trial for robbery, called as a witness a person who had pleaded guilty to the same robbery. Although this witness had pleaded guilty, sentence had not been imposed on his plea. At defendant's trial this witness successfully asserted his privilege against self-incrimination. The conviction was reversed on appeal with the holding that the witness had been available for questioning at defendant's trial. Anything the witness might have said "necessarily would be less incriminating in degree than his absolute plea of guilty to the charge." The "fact that judgment may not have been entered on the plea of guilt and sentence imposed, is of no moment." Also see United States v. Gernie, 252 F.2d 664 (2d Cir. 1958).

■ We therefore hold that a witness, initially charged jointly with the defendant for the offense on trial, having entered a plea of guilty to that charge, cannot successfully invoke the privilege of self-incrimination to questions regarding that charge because no further incrimination could be disclosed beyond the witness' full confession in his guilty plea which waives the privilege. It is not proper for us to guess as to the possible content of this witness' testimony, or determine what weight would attach thereto. It may be the witness would add little or be deemed lacking in credibility. But that is a matter for a jury to determine. Accordingly, the judgment and sentence is hereby reversed and remanded for a new trial.

BUSSEY, P. J., and SIMMS, J., concur.